**Dwayne LIPP, Respondent,**

v.

**Suzanne LIPP and Trinity Universal Insurance Co., Appellants.**

No. ED 79147.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Jan. 29, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 23, 2002.

Application for Transfer Denied
June 25, 2002.

Julius H. Berg, Clayton, MO, Jeanne Fox, St. Louis, MO, for appellant.

Carl D. Kinsky, St. Genevieve, MO, for respondent.

JAMES R. DOWD, Chief Judge.

Shirley and Dwayne Lipp, Melvin Lipp, individually and as conservator for the Estates of Brittney and Courtney Lipp (collectively, Respondents) sued Suzanne Lipp and Trinity Universal Insurance Company (Appellants) to recover damages on an injunction bond posted by Suzanne Lipp as plaintiff in a separate action. The trial court granted Respondents' motion for summary judgment and awarded $91,071.30 in damages, to be paid out of the injunction bond posted in the prior action. Suzanne Lipp and Trinity Universal appeal. We reverse and remand.

When considering an appeal from a grant of summary judgment we view the record in the light most favorable to the party against whom judgment was entered and give that party the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993).

Melvin and Shirley Lipp conveyed real estate in St. Genevieve County to their son Dwayne Lipp and his then wife Suzanne Lipp on March 19,1997 for "one dollar and other good and valuable considerations." The deed included a reverter clause, which provided that

> the title to said real property shall pass to Brittney Lipp and Courtney Lipp and any afterborn children of Dwayne Lipp as joint tenants with the right of survivorship in the event of the death of Dwayne Lipp or the dis-

solution of the marriage of Dwayne Lipp and Sue Lipp.

Two days later, Dwayne and Suzanne executed a deed of trust on that property in favor of Boatmen's Bank to secure their promissory note in the amount of $70,000.[1] The entire amount of that promissory note, plus interest, was to be paid one year later, on March 21, 1998.

On February 4, 1998, before the promissory note became due, Dwayne and Suzanne divorced. In the divorce decree the Circuit Court of St. Genevieve County found that "as of the entry of the Decree of Dissolution that the parties shall not have any marital legal interest in real property (specifically the former marital residence of the parties)" but "in the event and to the extent that either Petitioner or Respondent or both of them have any equitable interest in the real property and residence above noted, the Court orders such interest to be divided equally between them." The Decree of Dissolution also ordered Dwayne to hold Suzanne harmless from any liability on the promissory note. The Decree of Dissolution was not filed with the Recorder of Deeds of Ste. Genevieve County until June 16, 1999.

Dwayne failed to make payment on the promissory note when it became due on March 21, 1998. On August 10, 1998 Melvin Lipp was appointed conservator of the minor children's estate. On December 7, 1998, as part of negotiations to settle his debt on the promissory note, Dwayne's attorney informed NationsBank, who then held the promissory note, that "the bank has clear problems with the loan collateral." On January 20, 1999 Dwayne offered to pay the bank $650 per month on the

1. Boatmen's bank subsequently became NationsBank, which subsequently became Bank of America.

note. On February 10, 1999 NationsBank refused the offer and proceeded with its efforts to foreclose on the loan, writing that "the title company has checked with their underwriter and determined that they will insure over the reversionary clause ..." On February 16, 1999 Dwayne's attorney responded in writing:

I believe that based on the language in the deed Nation's Bank [sic.] does not have any collateral in the property and accordingly will not be able to proceed with foreclosure.... I have been instructed to take every necessary legal action to protect the children's interest in the property and am confident that given the language in the deed and the court's decision in the divorce action that the children will prevail against any purported interest Nation's Bank [sic.] may claim in the property.

The Successor Trustee under the bank's Deed of Trust gave notice that there would be a Trustee's Sale of the property on June 25, 1999. NationsBank informed Suzanne that it was prepared to bid $84,565.26, the amount then owed on the note. Because the fair market value of the property was substantially greater than that (between $250,000 and $300,000), Suzanne filed and obtained a temporary restraining order on June 24, 1999, stopping the foreclosure sale. Because § 526.070 requires that an injunction bond be posted in an amount sufficient to cover all damages that may be caused by an improvi-

dently granted injunction the court ordered Suzanne to post an injunction bond in the amount of $150,000.[2] Trinity Universal Insurance Company contracted with Suzanne to serve as surety in that amount. In its restraining order the court said:

Defendants Dwayne Lipp, Melvin Lipp, Shirley Lipp, Melvin Lipp, in his representative capacity as Conservator of the Estates of Brittney and Courtney Lipp, NationsBank, N.A., Mortgagee, and Micaheal Gaughan, Successor Trustee for NationsBank, N.A. and all other persons acting in concert and associated with Defendants, are hereby stayed, enjoined and restrained from foreclosing on the real property on the date set for foreclosure, June 25, 1999, or any other date thereafter, until further Order of this Court and are further stayed, enjoined and restrained from transferring, deeding, or taking any other actions which would affect the ownership interests of the parties involved or otherwise further cloud the title to the Property until further Order of this Court.

On July 8,1999 the court issued a preliminary injunction, ordering the same. On November 18, 1999 McKenzie Banking Company purchased the underlying promissory note from Bank of America, who had acquired NationsBank. On March 9, 2000 the trial court dismissed Suzanne Lipp's petition, finding that she lacked

---

2. Section 526.070 RSMo.1998 provides as follows:

No injunction, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the state in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may

be occasioned by such injunction to the parties enjoined, or to any party interested in the subject matter of the controversy, conditioned that the plaintiff will abide the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against him if the injunction shall be dissolved. In lieu of the bond the plaintiff may deposit with the court such sum, in cash, as the court may require, sufficient to secure such amounts.

standing because she had "no legal or equitable ownership interest in the property" and that their Conservator, Melvin Lipp, and his attorney were protecting the children's interests.

On March 30, 2000 Melvin Lipp, individually and as conservator for the estates of Brittney and Courtney Lipp, Shirley Lipp and Dwayne Lipp filed their petition for damages on the injunction bond. They contended that but for the temporary restraining order and preliminary injunction NationsBank would have bid in the full amount of the outstanding indebtedness on the promissory note, thereby relieving Dwayne of any liability on the note. The plaintiffs argued that as a result of the temporary restraining order and preliminary injunction NationsBank decided not to proceed with the foreclosure sale and Dwayne remained liable for the indebtedness on the property.

On October 17, 2000, the trial court issued its amended partial summary judgment, awarding damages to Dwayne in the amount of $89,195.06 plus $1,876.24 as attorney's fees. The court specified that the judgment was not final, saying: "This judgment is not a final judgment for purposes of appeal ... as all claims have not been disposed of by the court." On January 5, 2001, Melvin Lipp, individually and as conservator for the estates of Courtney and Brittney Lipp, and Shirley Lipp filed a Motion to Dismiss their claim against Suzanne with prejudice, on which the court wrote the notation "so ordered" on January 16, 2001. On March 2, 2001, Dwayne assigned all but $5,000 of the judgment to the holder of the note, McKenzie Bank. On March 15, 2001, this Court granted Suzanne and Trinity Universal Insurance Company leave to file a late notice of appeal, which they subsequently filed on March 23, 2001.

On appeal, Suzanne argues that the trial court erred in granting plaintiff Dwayne Lipp's motion for summary judgment because the materials filed by plaintiffs in support of their motion did not prove that the temporary restraining order and preliminary injunction were the proximate cause of Dwayne's damages.

Summary judgment is designed to permit the court to enter judgment, without delay, where the moving party has demonstrated a right to judgment as a matter of law on the basis of facts as to which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). When considering appeals from summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially, and thus our review is essentially de novo. *Id.*

■ A court's authority to award damages for an improperly granted temporary restraining order or preliminary injunction is purely statutory. *Collins & Hermann, Inc.-Welsbach & Associates Div. v. St. Louis County*, 684 S.W.2d 324, 325–26 (Mo.1985); §§ 526.070, 526.200 and 526.210 R.S.Mo (2000). The plaintiff in an action against an injunction bond can recover only those damages that are the actual, natural and proximate result of the restraint. *Id.* at 326. Damages that are merely speculative cannot be recovered. *Alliance Trust Co. v. Stewart*, 115 Mo. 236, 21 S.W. 793, 795–96 (1893). Damages resulting from the underlying suit or factors other than the injunction, are not recoverable from the proceeds of the injunction bond. *Kahn v. Royal Banks of Missouri*, 790 S.W.2d 503, 511 (Mo.App. E.D.1990).

The essence of Dwayne's argument is that if Suzanne had not obtained the TRO and injunction, the foreclosure sale would have proceeded as scheduled on June 25, 1999. At that sale NationsBank would have bid in the full amount of Dwayne and Suzanne's indebtedness on the note, discharging their debt on the promissory note. But because of the TRO and preliminary injunction NationsBank had an opportunity to rethink its decision and decided not to go through with the planned foreclosure. Instead, Nations-Bank sold the note to McKenzie Banking Company. McKenzie also elected not to foreclose. Dwayne supports these claims with affidavits from the banks.

Suzanne counters that when she and Dwayne divorced, it triggered the reverter clause in the deed to the property. Title to the property immediately passed to their children, Brittney and Courtney. At that point the bank lost its collateral on the note. RESTATEMENT OF THE LAW, PROPERTY §§ 124 and 409. Because the bank no longer had a lien on the property, the bank could not legally foreclose on the property. *See Joecks v. Farmers' & Merchants' State Bank of Hutchinson,* 169 Minn. 519, 211 N.W. 675, 676 (1927). Thus, any such proceeding would have been void and the debt on the note would not have been discharged. *See* GRANT S. NELSON AND DALE A. WHITMAN, REAL ESTATE FINANCE LAW 516 (3rd ed.1994) (and authorities cited therein).

Dwayne does not dispute Suzanne's claim that the bank had no collateral in the property. He argues nevertheless that the bank would have gone through with foreclosure but for Suzanne obtaining the injunction. He reasons that his debt on the note would then have passed to the title company's underwriter because of the wrongful foreclosure and that as a result he has incurred a loss. To support this he submits a letter from the bank to Dwayne's attorney saying that "the title company has checked with their underwriter and determined that they will insure over the reversionary clause ..." But this evidence fails to show that Dwayne's debt would have been extinguished. First, the deed issued at the foreclosure sale is voidable and subject to collateral attack by the estates of Brittney and Courtney Lipp. If the deed is successfully attacked by the children the holder of the note could then still recover from Dwayne and Suzanne on their note. Second, the letter Dwayne relies upon from the bank is not binding on either the title company or the title company's underwriter. Finally, even if the title company's underwriter would have covered the title company's loss as a result of the reversionary clause, this is not proof that the underwriter would not then sue Dwayne and Suzanne on the promissory note. While the injunction against the bank's proposed illegal foreclosure may have contributed to the bank's decision not to proceed, nothing in the record indicates Dwayne would be exonerated on his promise to repay the promissory note. Because Dwayne's claim that but for the injunction his debt would have been completely extinguished is unsupported by the record, the trial court erred in granting his motion for summary judgment and awarding him damages. We reverse and remand.

LAWRENCE G. CRAHAN, and MARY R. RUSSELL, JJ., concur.