Dottie D. **CRENSHAW,** Plaintiff–Respondent,

v.

Daniel A. **MAGUIRE** and, Carol A. Maguire, Defendant–Appellants,

and

Carol Crouse, Trustee, Defendant–Appellant.

No. ED 87223.

Missouri Court of Appeals, Eastern District, Northern Division.

Dec. 12, 2006.

Tina Rothschild, UAW–GM Legal Serv., St. Louis, for appellants.

Joshua E. Douglass, Bowling Green, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

This case disproves Robert Frost's rule that "good fences make good neighbors." The burning question is whether, under an Elsberry, Mo. zoning ordinance, an ordinary chain-link fence is a "building" or a "solid fence," and thus, whether such a fence must be placed no less than 7.5 feet from a homeowner's property line. The answer to this question lies in the construction of the term "building," as it is defined in the Elsberry city ordinances, and this Court will endeavor to enrich the annals of Missouri jurisprudence with our probing analysis of this question.

Appellants Daniel and Carol Maguire, et al., (hereinafter collectively "the Maguires") appeal from the judgment of the Circuit Court of Lincoln County, the Honorable David C. Mobley presiding, after the court found in favor of Respondent Dottie Crenshaw, ("Crenshaw"), and ordered the Maguires to remove the chain-link fence that spans the parties' joint property line, pursuant to Elsberry zoning ordinances. Because we believe the circuit court erred in applying the ordinances in question, we reverse the court's judgment and order.

### Standard of Review

As this is a court-tried case, our review of the circuit court's judgment is limited to a determination of whether it is supported by substantial evidence, whether it is against the weight of the evidence, and whether it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

### Factual Background

The record below reveals that the parties own residential property bordering one another in the city of Elsberry. The Maguire's property is surrounded by an ordinary chain-link fence, which is the subject of this litigation. The specific fence at issue runs along the property line separating the Crenshaw and Maguire lots. The fence was constructed in 2004, and a dispute ensued regarding the legal property line. Following an unsuccessful attempt to have the City order the removal of the fence, Crenshaw brought suit against the Maguires in the circuit court alleging, *inter alia*, that the fence constituted a nuisance because it violated a specific Elsberry zoning ordinance prohibiting

the construction of any "building" within 7.5 feet of a property line. The circuit court agreed, and ordered the Maguire's to remove the fence, and if they replaced it, ordered that it be placed no less than 7.5 feet from the Maguire's property line.

The Elsberry ordinance at issue, Article VI, Section 5, provides that property owners are prohibited from constructing any "building" within 7.5 feet of their property line. In the ordinance, a building is defined as "[a]ny structure designed or built for the support, enclosure, shelter or protection of persons, animals, chattels or property of any kind." Furthermore, it is important to note that Article VII, Section A of the Elsberry zoning ordinances provides a specific exception for "solid fences," permitting such fences "not in excess of six (6) feet in height ... on the boundaries of that portion of any lot which encompasses the 'real yard'[1] of such lot as defined by this Ordinance, provided no such fence may be erected within ten (10) feet of an existing dwelling on an adjoining lot."[2]

### Discussion

In this case, there is no question that the Maguire's fence is located within 7.5 feet of the pertinent property line; thus, the dispositive issue is whether the fence constitutes a "building" under the relevant Elsberry ordinance. Because we believe that no reasonable construction of term "building," including how it is specifically defined within this ordinance, could include such a chain-link fence, we hold that the trial court erroneously concluded that the Maguire's fence is a "building," and thus, erred in ordering its removal. Furthermore, we hold that the chain-link fence in

question falls within the exception provided for "solid fences," and thus, is permissible in its current location, notwithstanding the fact that this fence is permeable in some sense (and thus, is not entirely "solid").

Our analysis in this case begins and ends with the construction of the terms "building" and "solid fence," as they are defined by the ordinance. In her brief, Crenshaw argues that the trial court correctly found that this fence was a "building," because, first, the Maguires admitted at trial that the fence was used as an "enclosure" for their dog. This admission, in light of the definition that a building is "[a]ny structure designed or built for the ... *enclosure* of persons, *animals*, chattels or property of any kind ...," provides substantial evidence supporting the trial court's decision, according to Crenshaw (emphasis added). Second, Crenshaw argues that if such a fence is not a "building," then no exception would be required for "solid fences." Finally, Crenshaw argues that even if the Maguire's fence falls within the limited exception for "solid fences," it still violates the ordinance because it is not limited to the "rear yard," as required by the ordinance. Although this Court finds Crenshaw's arguments to be ambitious, they are nonetheless unavailing.

In the alternative, the Maguires argue that the trial court erred in concluding that their fence is not permitted in it current location because it clearly falls within the exception for "solid fences." The Maguires point out that Crenshaw, prior to filing this lawsuit, also sought recourse with Elsberry city officials, but was unsuc-

---

1. "Yard, Rear" is defined as "a yard extending across the rear of a lot and being the minimum horizontal distance between the rear lot line and rear of the main building...."

2. There is no dispute that Crenshaw's house is approximately 14 feet from the Crenshaw/Maguire property line, so the 10-foot setback requirement for "solid fences" is not implicated in this case.

cessful in having the fence removed. In particular, the Maguires note that the Elsberry City Attorney, Bobette Shipman, informed Crenshaw that she believed the City did not have the authority to order the removal of the fence.[3] In addition, the Maguires argue that since the Elsberry zoning ordinances specifically permit solid fences, the city council must have also intended to permit chain link fences. The Maguires point out that the Elsberry zoning ordinance in question has a specific provision regulating the *height* of "buildings." This provision is relevant because, according to the ordinance, the height of a building is generally measured from the ground to the *roof*.[4] According to the Maguires, since a fence generally does not have a roof, the drafters of the ordinance meant to exclude *all* fences (solid, chain-link or otherwise) from the definition of building, notwithstanding the specific ordinance excepting "solid fences" from the general rule. Finally, the Maguires rely on Missouri case law, which they argue supports a property-owner's right to freely use real property, unless expressly prohibited by law. *See generally, City of Louisiana v. Branham*, 969 S.W.2d 332, 338 (Mo. App. E.D.1998); and *Lunnemann v. Hlavaty*, 684 S.W.2d 948 (Mo.App.E.D.1985). Finally, the Maguires argue that "common sense" dictates such a fence be permitted at or near a property line to prevent confusion over the true property line, as well as to curtail adverse possession claims.

We find the Maguires' arguments to be both sound in principle and grounded in the law, and therefore, we generally agree with their arguments.

Missouri courts have a well-established tradition of protecting real property-owners' rights to freely use their property as they desire. *Udo Siebel–Spath v. Construction Enterprises, Inc.*, 633 S.W.2d 86 (Mo.App. E.D.1982). For example, in *Udo Siebel–Spath*, this Court specifically noted that, "[r]estrictions on the free and untrammeled use of land are not favored by the law and will be narrowly construed." *Id.* at 88. This Court further noted that "[r]estrictive covenants are to be strictly construed, are not to be extended by implication to include anything not clearly expressed by them. If there is substantial doubt of their meaning, such doubt should be resolved in favor of the free use of the property." Missouri courts take the same approach regarding zoning ordinances, and have likewise held that "[z]oning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the property owner against the zoning authority." *St. Louis County v. Taggert*, 866 S.W.2d 181, 182 (Mo.App. E.D.1993). The *Taggert* Court further noted that, "[w]here a term in a zoning ordinance is susceptible of [sic] more than one interpretation, the courts are to give weight to the interpretation that, while still within the confines of the

---

**3.** The relevant text of Ms. Shipman's letter reads: "I am writing in reference to your past correspondence concerning the chain link fence erected by the McGuires [sic] on the lot adjoining Dottie Crenshaw on the west. After having thoroughly reviewed our City ordinances with reference to the factual situation presented, I do not believe the City has the power under the existing ordinances to require removal of the fence. The specific situation presented is not clearly addressed nor prohibited by our ordinances, and I believe the City would expose itself to possible litigation upon which it could not prevail if it

undertakes to have the fence removed. Courts are wont to find in favor of the unfettered use of real property if the activity in question is not clearly prohibited."

**4.** The relevant provision of the ordinance reads, in pertinent part, as follows: "Building, Height of. The vertical distance from the grade to the highest point of the coping of the flat roof or to the deck line of a mansard roof, or to the mean height level between eaves and ridge for gable, hip and gambrel roofs."

term, is least restrictive upon the rights of the property owner to use his land as he wishes." *Id.*

In this case, there is no question that the zoning ordinance in question is being used to curtail the right of the Maguires to freely use their property. Accordingly, we approach this case with a healthy dose of skepticism regarding the application of a zoning ordinance that effectively prevents the Maguires from using their property in a manner that is otherwise entirely reasonable: the clear and uniform delineation of their property line; the enclosure of their pet; and the prevention of the entry of unwanted trespassers and animals. Accordingly, by applying the aforementioned principles of zoning ordinance construction, we conclude that the term "building," as it is defined in the relevant Elsberry zoning ordinance, does not clearly encompass a chain-link fence, such as the one bordering the Maguires' property. Furthermore, we find that the fence in question falls within the exception provided for "solid fences." Although we acknowledge that a chain-link fence is not solid in every sense of the word—it is indeed permeable to vast amounts of light and air—it nonetheless complies with the dictates of the rule, and does not otherwise violate what we believe is the overarching intent of the exception—to permit reasonable fences along property lines for the aforementioned reasons. Therefore, the court's application of the Elsberry "building" setback requirement to this fence was an error or law and cannot stand.

The judgment of the circuit court is REVERSED.

GLENN A. NORTON, P.J., and CLIFFORD H. AHRENS, J., concur.