**PETROL PROPERTIES, INC.,**
**Plaintiff–Appellant,**

v.

**STEWART TITLE COMPANY, d/b/a Stewart Title Guaranty Company, and Lincoln Land Title Company, Defendants–Respondents.**

No. 27661.

Missouri Court of Appeals,
Southern District,
Division Two.

May 30, 2007.

John E. Price, Springfield, for Appellant.

Gail L. Fredrick, Fredrick, Rogers & Vaughn, P.C., for Respondent Lincoln Land Title Co.

James R. Fossard, Pratt, Fossard, Jensen & Masters, L.L.C., Springfield, for Respondent Stewart Title Guaranty Company.

PHILLIP R. GARRISON, Judge.

Petrol Properties, Inc., ("Petrol") appeals from the trial court's judgment in favor of Stewart Title Company, d/b/a Stewart Title Guaranty Company ("Stewart Title") and Lincoln Land Title Company ("Lincoln") (collectively referred to as "Defendants"), in its suit to quiet title to certain real estate and for negligent title examination. We affirm in part and reverse in part.

This dispute primarily concerns the validity of a deed of trust, currently held by Stewart Title, to a ten-acre tract of land[1] ("ten-acre tract"). Initially, Petrol[2] possessed exclusive title to the ten-acre tract, but later granted a warranty deed to its legal advisor Gary Love, ("Love") with the understanding that Love would show the property on his financial statement in or-

---

1. This tract of land is located in Greene County, Missouri, at the southeast corner of Highway 125 and State Route YY (Division Street).

2. Petrol was a corporation that acquired real estate for use in petroleum marketing and other ventures.

der to obtain a loan. Love had simultaneously re-conveyed the property back to Petrol by warranty deed, with the instructions that Petrol wait for an unspecified period before recording it. Love subsequently recorded his warranty deed and then executed a deed of trust against the ten-acre tract to Southwest Bank, securing a loan for approximately $50,000.

Believing that it was still the owner, Petrol later sold six acres of the ten-acre tract to Lindy May ("May"). Before closing on the transaction, Lincoln[3] performed a title search for the ten-acre tract and reported to the parties that it had come back "clean." Love eventually defaulted on the loan secured by the deed of trust, and Mercantile Bank, successor to Southwest Bank, instituted foreclosure proceedings. Petrol informed all parties involved that it was going to attempt to have the deed of trust cancelled on the ground that Love had committed a fraud when he caused a deed of trust to be placed against the ten-acre tract. To protect his interest in the property, May purchased the note from Mercantile Bank, took assignment of the deed of trust, and executed a partial release of his six acres. May then filed a claim on his title insurance policy with Stewart Title, and as part of the settlement of that claim, Stewart Title purchased the note and deed of trust from May.

As the result of Stewart Title instituting foreclosure proceedings on the remaining four acres, Petrol filed suit against Defendants seeking to cancel Stewart Title's deed of trust, because it was purchased with notice of Petrol's allegation that it was obtained fraudulently. Petrol also sought to recover for negligence on the part of Lincoln in not discovering the encumbrance when it performed a title search on the property.

To assist in our analysis, we set out the following timeline below describing the events in greater detail:

**Early 1991**—E. Jack Webster, Jr., ("Webster Jr."), president and founder of Petrol, begins meeting with Love, a "reorganization attorney" who also happened to be his son-in-law, to discuss ways in which the corporation could work out its financial problems.

**January 1991**—Webster Jr. begins negotiating with May to lease six acres of the ten-acre tract.

**February 1991**—Webster Jr.'s son and vice president of Petrol, Jack Webster, III ("Webster III"), became concerned that Love may be charging for his legal advice, and suggested a meeting with Love to discuss the issue. At the meeting, Love tells the Websters, "You can't afford me," but, "what you can do to help me is to let me show a piece of property on my financial statement to help me with my Prop Company."[4]

**March 8, 1991**—The Websters agree with Love to exchange two warranty deeds to the ten-acre tract. The first deed ("warranty deed") is a warranty deed from Petrol to Predator Props, which is delivered to Love on behalf of Predator Props. The second deed ("reconveyance deed") is a warranty deed from Predator Props re-conveying the same ten-acre tract back to Petrol.

**March 12, 1991**—Love, on behalf of Predator Props, executes a deed of trust against the ten-acre tract to Southwest

---

**3.** For matters involved in this dispute, Lincoln, a Missouri corporation, was acting as authorized agent for Stewart Title, a Texas corporation.

**4.** At that time, Love was the owner of a company which manufactured boat propellers called Predator Props, Inc. ("Predator Props").

Bank, securing a loan for approximately $50,000.

**July 26, 1991**—May and Petrol finalize a lease agreement for the six-acres, which includes an option to purchase.

**April 30, 1992**—Webster III notices that the re-conveyance deed is not affixed with Predator Props' corporate seal, so he sends a letter to Love to "try and get [Love] to come forward with the corporate seal to perfect the re[-]conveyance deed," which Love does shortly after the letter was written.

**June 9, 1992**—In a letter to Webster Jr., Love relates the following:

> [I] took a piece of unencumbered real property and borrowed against it, [and][u]sed the money for working capital for my Prop Corporation[.] ... The idea was never, of course, that I would retain this property, but ultimately would be paid and the property reconveyed to you. I even gave you a deed back to hold in that regard.[5]

**June 28, 1992**—May sends a letter to Petrol exercising his option to purchase the six acres as provided in the lease agreement.

**July 15–16, 1992**—May contacts Lincoln to handle the closing and to do a title commitment for the purchase of the six acres.

**July 21, 1992**—Webster III records the re-conveyance deed from Predator Props.

**July 28, 1992**—May receives the title commitment, which shows that title is vested in Petrol and that there are no liens against the property. Closing occurs for the six acres, and May is told by Larry Jones ("Jones") at Lincoln that the title to the six-acre tract is "clean." Petrol receives the full contract price of $35,000 from May, with no deduction to pay the lien of the bank.

**July 28, 1992**—In a letter to Webster Jr., Love states the following:

> My understanding is that [May] is ready to close on one half of the investment property at Division and 125. I received the legal for that closing at 4:30 p.m. on July 27th. I had previously talked with Gary Metzger,[6] who indicated that he would release these properties for that sum. That will leave a small sum still owing to Metzger. Ironically, it will be about what you owe me once this 35,-000 is applied, although I did not plan it that way.

**December 1992**—Webster III discovers the letters from Love to Webster Jr., when he is preparing the taxes for Petrol.

**The fall of 1997**—Webster III is contacted by a representative of Mercantile Bank, successor to Southwest Bank, advising him that Love had a note and mortgage with Mercantile Bank that was in default. Webster III contacts Mark Powell ("Powell"), an attorney who represented Mercantile Bank, and Jones at Lincoln, and advises them that he believes that the deed of trust had been obtained fraudulently by Love.

**December 1997**—Webster III receives a notice of foreclosure.

**January 29, 1998**—May purchases the note, takes assignment of the deed of trust, and executes a partial release of

---

5. This portion of the letter was read at trial and is therefore, included in the transcript. The actual letter was admitted at trial as an exhibit, but was not included in the record on appeal.

6. Webster III knew Gary Metzger and knew that he was an employee with Southwest Bank.

his six acres. May then makes a claim as an insured on his title policy and Stewart Title purchases the note and deed of trust from May.

After Stewart Title commenced foreclosure proceedings against the remaining four-acres, Petrol filed suit against Defendants seeking to quiet title to the four acres and for damages for negligent title examination. On December 12, 2005, after hearing evidence, the trial court entered its judgment and findings of fact in favor of Defendants and against Petrol on all claims. This appeal followed.

## OPINION

 In reviewing a court-tried case, we will reverse the judgment of the trial court if it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Crenshaw v. Maguire*, 208 S.W.3d 302, 303 (Mo.App. E.D.2006). The power to set aside a judgment on the ground that it is against the weight of the evidence must be exercised with caution, and only where we have a firm belief that the judgment was wrong. *Bacon v. Uhl*, 173 S.W.3d 390, 396 (Mo.App. S.D.2005). "When we evaluate the weight of the evidence, we mean 'its weight in probative value, not the quantity or amount of evidence.'" *Id.* (quoting *Lee v. Hiler*, 141 S.W.3d 517, 525 (Mo.App. S.D.2004)).

> On appeal, we review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. We defer to the trial judge's superior opportunity to assess the witnesses' credibility. Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses.

*Id.* (internal quotations and citations omitted).

Petrol brings six points on appeal, the first three of which challenge the trial court's entry of judgment in favor of Defendants on Count I. In that count, Petrol sought to cancel the deed of trust held by Stewart Title, and quiet title to the property that is subject to the deed of trust, on the theory that Stewart Title took the deed of trust with notice of and subject to Petrol's fraud claim against Love.

 In its judgment, the trial court found that Stewart Title took assignment of the deed of trust with notice of Petrol's allegation that it was originally executed by reason of fraud.[7] This is important because the relief of cancellation may be granted against one who purchases a deed with notice of fraud or other grounds of cancellation. *See Blaise v. Ratliff*, 672 S.W.2d 683, 692 (Mo.App. E.D.1984)(explaining conversely, that "[t]he relief of cancellation will not be granted against a bona fide purchaser for value and without notice of the fraud or other grounds of cancellation"). However, the right to the relief of cancellation is necessarily dependent upon the merit of the underlying claim of fraud. Here, the trial court found that Petrol was not entitled to cancellation of the deed of trust because it failed to prove all of the elements of its fraud claim against Love.

 The elements to set aside a deed for fraud are the same as in any action for relief on that ground. *Alexander v. Sagehorn*, 600 S.W.2d 198, 200–01 (Mo.App.

---

7. We note that, in its brief, Stewart Title argues that "[it] bought the note from the bank and is entitled to stand in the position of [Southwest Bank] with regard to the validity of the note." This issue was not raised in the pleadings, and the trial court ruled that Defendants were barred from raising it as a defense.

S.D.1980). Those elements are as follows: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity; (5) his intent that the statement should be acted upon by the other party in the manner contemplated; (6) that party's ignorance of the falsity; (7) reliance on the truth; (8) the right to rely thereon; and (9) injury. *Id.* Each of these elements is essential and must be proven as a prerequisite to relief. *Holtschneider v. Stratman,* 655 S.W.2d 47, 48 (Mo.App. E.D.1983). Failure to establish any one of the nine elements is fatal to recovery. *Trimble v. Pracna,* 167 S.W.3d 706, 712 (Mo. banc 2005). In order to justify the cancellation of a deed, the evidence supporting the grounds for cancellation must be clear, cogent and convincing. *Thurmon v. Ludy,* 914 S.W.2d 32, 34 (Mo.App. E.D. 1995).

■ Petrol's first two points challenge the trial court's findings that it failed to prove elements of its fraud claim against Love, i.e., that Love made a representation that was false. Because our treatment of Petrol's second point is dispositive of its first point, we will address it first. Petrol's second point challenges the following finding of the trial court as being against the weight of the evidence:

> [Petrol] . . . failed to sustain its burden of proof to show that Love's grant to Southwest Bank of a Deed of Trust on the subject property amounted to a misrepresentation. [Petrol] admitted that its understanding was that Love would use the Deed from Petrol on the subject property to assist him with getting operating funds for his corporation. Pledging the property to the bank as a means of obtaining those operating funds does not necessarily exceed the scope of what [Petrol] concedes Love broadly and vaguely described that he would do.

As previously set out, Love prepared two warranty deeds regarding the ten-acre tract, and on March 8, 1991, he met with the Websters to exchange the deeds. Love told the Websters that the purpose of the two deeds was in "keeping with the conversation [they] had a couple of weeks earlier, in that [they] couldn't afford him, so [they were] going to let him show some of [their] property on his statement to help him with his financing." Love also told them that the re-conveyance deed from Predator Props to Petrol was to be held for an "unspecified period of time, and that he would tell [them] when it was time to record it." On March 14, 1991, Love gave a deed of trust against the property to Southwest Bank, securing a loan for approximately $50,000.

Webster III testified that he understood that Love was going to represent that he owned the property to a lending institution to help obtain financing, but Love never explicitly informed him that he was going to mortgage the property. Webster III further stated that he did not contemplate at the time what Love would do with the deed. Whether or not Love explicitly informed the Websters he was going to mortgage the property, his actions were consistent with what he told the Websters he was going to do: represent to a lending institution that he owned the property in order to obtain financing.

We reiterate that the power to set aside a judgment on the ground that it is against the weight of the evidence must be exercised with caution, and only where we have a firm belief that the judgment was wrong. *Bacon,* 173 S.W.3d at 396. Here, we do not have a firm belief that the trial court was wrong in finding that Petrol failed to prove that Love's representation was false. Petrol's second point is denied.

Because Petrol has not proven an essential element of its claim of fraud, from

which its claim against Defendants stems, the trial court did not err in entering judgment for Defendants on Count I. Accordingly, we need not address Petrol's first point which challenges the trial court's finding that Petrol did not meet its burden of proof with regards to the element of "right to rely."

■ The following finding by the trial court is the subject of Petrol's third point:

[Petrol] should be estopped from asserting [its fraud] claim. [Petrol] agreed with Love to exchange Deeds (and to indefinitely delay recording its Deed) with the knowledge and intent that Love would represent to the bank that Predator owned the property free and clear of any right or interest of [Petrol]. In essence, [Petrol] cannot be heard to complain that it is a victim of fraud by Love, when [Petrol] had some participation in Love's efforts to defraud Southwest Bank.

■ Petrol challenges that finding as being against the weight of the evidence. Aside from the fact that Petrol failed to prove the essential elements of a fraud claim against Love as discussed above, this point fails for other reasons as well. The evidence presented at trial clearly shows that Petrol agreed that Love could represent to a lending institution that it owned the subject property so that Love could obtain financing, even though Petrol's position at trial and on appeal is that Petrol was at all times the rightful owner of the property that Love borrowed against. In acquiescing to Love's request, Petrol assisted Love in committing a fraud against Southwest Bank. "One who participates in a fraud is of course guilty of fraud, and one who, with knowledge of the facts, assists another in the perpetration of a fraud is equally guilty." *Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 73 (Mo.App. E.D. 1999) (quoting *Hobbs v. Boatright*, 195 Mo.

693, 93 S.W. 934, 939–40 (1906)). The trial court found that because of Petrol's actions, it should be estopped from asserting a claim of fraud. We agree. "One who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct." *Guzzardo v. City Group, Inc.*, 910 S.W.2d 314, 317 (Mo.App. E.D. 1995) (quoting *Warren v. Warren*, 784 S.W.2d 247, 254 (Mo.App.W.D.1989)). Petrol's third point is denied.

■ In Petrol's fourth point, it alleges that the trial court erred in entering judgment in favor of Defendants on its action for negligent title examination, on the ground that Petrol failed to prove the element of causation. Specifically, Petrol argues that the trial court's finding that Petrol knew that Love had borrowed against the ten-acre tract prior to Lincoln's title examination was not supported by substantial evidence. We disagree.

■ In order to prevail on a claim of negligence, a plaintiff must prove the following: (1) the existence of a legal duty owed to the plaintiff, (2) breach of that duty through a negligent act by the defendant, (3) proximate causation between the breach and the resulting injury, and (4) resulting damages. *Ostrander v. O'Banion*, 152 S.W.3d 333, 338 (Mo.App. W.D. 2004). In the present case the trial court found in relevant part as follows:

[T]he evidence failed to show that the erroneous title commitment caused and prevented [Petrol] from discovering the bank's Deed of Trust on the subject property. Indeed, the June 9, 1992[,] letter from Gary Love to [Webster Jr.] confirmed that Love "had borrowed against it", [sic] this occurring some six weeks prior to the sale to [May]. Jack Jr[.]'s knowledge must be imputed to the corporation.

 In arguing that this finding is not supported by the evidence, Petrol relies on Webster III's testimony that the "letter did not identify the subject property as the property Love had 'borrowed against.'" The letter referenced in the trial court's findings was admitted as an exhibit at trial, but was not made part of the record on appeal. It is the appellant's duty to compile the record on appeal, which is to contain all of the record and evidence necessary for the determination of the questions presented. Rule 81.12;[8] *In re J.M.*, 1 S.W.3d 599, 600 (Mo.App. S.D.1999). "If exhibits admitted into evidence at trial are not filed on appeal, they are presumed to support the trial court's findings." *In re J.M.*, 1 S.W.3d at 600. Therefore, we presume that, pursuant to the June 9, 1992, letter, Webster Jr. was aware that Love had borrowed against the property represented by the deeds which had been exchanged. We agree with the trial court that this knowledge is imputed to Petrol. *See Sequa Corp. v. Cooper*, 128 S.W.3d 69, 76 (Mo.App. E.D.2003)(explaining that, "the knowledge of an agent of a corporation with reference to a matter within the scope of his authority and employment and to which his authority or employment extends is imputed to the corporation.").

In its amended petition, Petrol claimed the following regarding causation:

[T]he failure of [Lincoln] to advise and notify Petrol of the existence of the Deed of Trust against the [subject property] prevented Petrol from discovering the fraud of [Love] . . . until December, 1997, when the Notice of Foreclosure was given to Petrol, and by this time Predator Props, Inc. and [Love] were already in default on numerous other loans and obligations . . . and did not have sufficient remaining assets to com-

pensate Petrol for the damage done to the value of the [subject property] having an approximately $40,000[ ] encumbrance against it.

Assuming *arguendo* that Defendants breached a duty owed to Petrol and that Petrol suffered an injury as a result, Petrol has not proven proximate causation between the breach and the resulting injury. Pursuant to the trial court's finding, which is supported by the record, Webster Jr., an agent for Petrol, became aware that the subject property was encumbered prior to Lincoln's advisement that the title was "clean." Therefore, Lincoln's failure to discover the lien on the subject property cannot have been the proximate cause of the injury as pled by Petrol. Point four is denied. Because we find that the trial court did not err in finding that Petrol failed to prove the element of causation, we need not address Petrol's fifth point which challenges the trial court's finding that it had not proven damages.

Petrol's sixth point reads as follows:

The trial court's judgment that the $1,200[ ] bond filed by Petrol should be forfeited to Stewart [Title] is not based upon any substantial evidence in the record and is a misapplication of Missouri law, in that Stewart [Title] failed to introduce any evidence that it had been damaged by issuance of the injunction or any evidence of the amount of such damage.

We agree.

 As with Petrol's other allegations of trial court error, "[w]e will affirm an award of damages on an injunction bond unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Dent Wizard of San Fran-*

---

8. All references to rules are to Missouri Rules of Civil Procedure (2005), and all statutory references are to RSMo (2000), unless otherwise indicated.

*cisco, Inc. v. Bunetic,* 172 S.W.3d 481, 483 (Mo.App. E.D.2005).

 "A court's authority to award damages for an improperly granted temporary restraining order or preliminary injunction is purely statutory." *Lipp v. Lipp,* 75 S.W.3d 736, 739 (Mo.App. E.D. 2002); Sections 526.070, 526.200 and 526.210. Only a party which is enjoined or a party "interested in the subject matter of the controversy" may recover damages on an injunction bond. Section 526.070; Rule 92.02. "When a party is damaged by the improvident issuance of an injunction, recovery is limited to the amount of the injunction bond." *Ours v. City of Rolla,* 14 S.W.3d 627, 629 (Mo.App. S.D.2000).

 In this case, Petrol filed an "Application for Injunctive Relief" against Defendants on May 20, 2004, seeking to enjoin them from foreclosing on the four-acre tract. On May 27, 2004, the trial court entered a "Temporary Restraining Order" ("TRO"), with Petrol being ordered to post a $1,200 cash bond, which it did on May 28, 2004. The TRO prevented Stewart Title from foreclosing on, selling, transferring, or assigning the subject property. On June 8, 2004, a "Stipulated Preliminary Injunction" was filed, in which the parties stipulated that the TRO was to remain in effect until the completion of trial, which was held October 14, 2005.

 Here, the record is void of any evidence regarding the damages suffered by Stewart Title as the result of the issuance of the TRO. The burden of proving a loss resulting from the issuance of a restraining order or preliminary injunction falls on the party seeking damages. *Ours,* 14 S.W.3d at 629. On appeal, both Defendants argue that "[k]nowing that the [TRO] stopping the Stewart [Title] foreclosure was entered on May 27, 2004, and the fact that this case went to trial on October 14, 2005, it does not take much in the way of simple reasoning to know that the trial court was justified in ordering the forfeiture of the bond." Defendants further assert that "the damages to Stewart [Title] in terms of the interest that would have accrued on the promissory note would dwarf the sum of $1,200[ ], which was the amount of the bond." Such assertions are unsupported by the record. The party seeking damages "can recover only those damages that are the actual, natural and proximate result of the restraint." *Lipp,* 75 S.W.3d at 739. Damages that are merely speculative cannot be recovered. *Id.* We find no evidence in the record proving damages suffered by Stewart Title as a result of the issuance of the TRO. Petrol's sixth point is well taken.

We reverse the trial court's award of $1,200 on the injunction bond, because there is no evidence in the record to support it. In all other respects, the judgment of the trial court is affirmed.

BATES, C.J., and BARNEY, J., concur.